# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WAYNE THOMPSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WORCESTER COUNTY, et al., )<br>)<br>Defendants. )<br>) | Civil No.<br>10-40126-FDS |

**MEMORANDUM AND ORDER ON MOTION OF DEFENDANT JOSEPH EARLY TO DISMISS, MOTION OF DEFENDANTS GUY GLODIS AND MICHAEL LANDGREN FOR A MORE DEFINITE STATEMENT, AND PLAINTIFF'S MOTION TO COMPEL**

SAYLOR, J.

This is an action by a prisoner arising out of alleged prison abuses. Plaintiff Wayne Thompson, who is proceeding *pro se*, contends that Massachusetts prison and state officials conspired to injure him and deny medical treatment while he was incarcerated at the Worcester County Sheriff's Office. Pursuant to 42 U.S.C. § 1983, Thompson has asserted violations of the Eighth and Fourteenth Amendments against Worcester County, the Sheriff and District Attorney of Worcester County, and various prison officials. This Court has jurisdiction under 28 U.S.C. § 1331.

District Attorney Joseph Early has moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Sheriff Guy W. Glodis and Classification Director Michael Landgren have moved for a more definite statement under Fed. R. Civ. P. 12(e). Plaintiff has moved to compel the disclosure of the identities of several unknown defendants.

For the following reasons, the motion to dismiss will be granted; the motion for a more

definite statement will be granted; and the motion to compel will be denied.

I. **Background**

The complaint contains the following factual allegations.

Plaintiff Wayne Thompson is a prisoner incarcerated in New York. In March 2010, he was transported to Massachusetts to face various criminal charges in Worcester County District Court.[1] Thompson was held as a pretrial detainee at the Worcester County Sheriff's Office. Thompson alleges that he observed gang members providing bribes to prison officials in exchange for special privileges. Among other things, he contends that prison officials cooperated with gang members to place enemies of the gang in "long-term keeplock."

According to the complaint, between April 22 and April 26, prison and state officials conspired to allow a gang member to attack Thompson in his cell. First, a correctional officer at the jail (styled "John Doe" by the complaint) called Thompson a "snitch" within the hearing of gang members in order to turn them against Thompson. District Attorney Joseph Early then intentionally delayed Thompson's transfer back to New York to allow time for the attack, while prison officials, including defendant Michael Landgren, kept Thompson in the same cell block in violation of prison policies.[2] On April 26, prison officials removed security personnel from Thompson's housing block. He was then attacked and injured in his cell by an armed prisoner.

---

[1] Thompson was transported and held in Massachusetts pursuant to the Interstate Agreement on Detainers ("IAD"). The IAD is a congressionally-sanctioned interstate compact that establishes procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial. *See Cuyler v. Adams*, 449 U.S. 433, 435 n.1 (1981). Massachusetts and New York are both parties to the compact. *See* Mass. Gen. Laws ch. 276 App., §§ 1-1 to 1-8; N.Y. Crim. Proc. Law § 580.20; *Commonwealth v. Dickson*, 386 Mass. 230 (1982).

[2] Thompson alleges that Early's delay violated the IAD, which provides that "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state." Mass. Gen. Laws ch. 276 App., § 1-1(V)(e).

Prison officials next forced Thompson to wait in his cell before receiving medical assistance and then conspired to deny him proper medical care.[3] Thompson was then returned to New York.

Thompson filed this action on July 2, 2010, alleging that Early, Doe, Landgren, Sheriff Glodis, and others violated his rights under the Eighth and Fourteenth Amendments. The individual defendants are being sued in both their personal and official capacities.

## II. The Motion to Dismiss

### A. Standard of Review

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).[4] To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and

---

[3] The complaint makes inconsistent statements as to how long Thompson had to wait before receiving medical care.

[4] Early also requests dismissal of the official-capacity claim under Fed. R. Civ. P. 12(b)(1) on grounds of sovereign immunity, and plaintiff appears to have withdrawn that claim in response. The motion to dismiss will therefore be granted as to the official-capacity claim.

3

original alterations omitted).

Because plaintiff is proceeding *pro se*, this Court holds his pleadings to a less-stringent standard. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). Where the Court cannot ascertain the nature and basis of any legitimate claims, however, it is under no obligation to rewrite the pleadings on his behalf. *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 Fed. Appx. 274, 276-277 (11th Cir. 2008) ("While a trial judge is to employ less stringent standards in assessing *pro se* pleadings than would be used to judge the final product of lawyers, this leniency does not permit the district court to act as counsel for a party or to rewrite deficient pleadings.").

**B.** **Analysis**

Prosecutors have absolute immunity for actions that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 129 S. Ct. 855, 860 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). In particular, "[a]bsolute immunity applies when a prosecutor prepares to initiate a judicial proceeding." *Id.* at 861 (citing *Burns v. Reed*, 500 U.S. 478, 492 (1991)). Dismissal is mandatory where immunity lies, regardless of the circumstances or motivations surrounding the act. "An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler*, 424 U.S. at 419 n.13.

Plaintiff contends that Early's decision to delay the transfer back to New York is outside the scope of prosecutorial immunity because it is an administrative task. "[A]bsolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is instead engaged in . . . administrative tasks." *Van de Kamp*, 129 S. Ct. at 861 (internal quotations omitted).

4

Plaintiff's argument is without merit. Courts addressing the issue have uniformly held that the transfer of a prisoner under the IAD is within the scope of a prosecutor's trial duties. *See, e.g.*, *Tungate v. Thoms*, 45 Fed. Appx. 502, 504 (6th Cir. 2002) (prosecutor's request to transfer prisoner under IAD was prosecutorial, rather than administrative, act, and protected by absolute immunity); *Bush v. Muncy*, 659 F.2d 402, 413-14 (4th Cir. 1981) (affirming absolute immunity for Maryland prosecutors who requested a transfer of defendant to Maryland pursuant to IAD); *Ortiz v. Karnes*, 2006 WL 3507068, at *2 (S.D. Ohio Dec. 4, 2006) ("A prosecutor who procures an extradition warrrant and otherwise accomplishes the extradition of a criminal defendant pursuant to the [IAD] is performing a prosecutorial function and is therefore immune from suit with respect to those activities."); *see also Sebastian v. Wilson*, 2010 WL 2540776, at *2 (M.D. Ga. June 18, 2010) ("[Absolute] immunity extends to participating in the extradition process.").

This makes good sense. The decision to request a prisoner's transfer to face charges is closely related to the decision to bring charges in the first place. Such decisions "relate[] directly to the initiation of prosecutions—the precise zone of decision-making the Supreme Court has placed at the center of the immunity doctrine." *Harrington v. Almy*, 977 F.2d 37, 42 n.3 (1st Cir. 1992) (holding that prosecutor's general charging policy was prosecutorial, rather than administrative, function); *see Van de Kamp*, 129 S. Ct. at 861 (preparations for trial are protected by absolute immunity). Because the IAD requires return of transferred prisoners to the originating state, *see New York v. Poe*, 835 F. Supp. 585, 589 (E.D. Okla. 1993), the Court sees no reason to treat the return transfer any differently than the initial one.

Accordingly, the Court finds that Early's actions are protected by absolute prosecutorial

5

immunity, and the motion to dismiss will be granted.[5]

### III.     The Motion for a More Definite Statement

Glodis and Landgren have moved for a more definite statement under Fed. R. Civ. P. 12(e). They assert that "[o]ther than naming Sheriff Guy W. Glodis and Michael Landgren as defendants, [the] Complaint is devoid of any allegations against either defendant. The failure to name either defendant in [the] Complaint, makes it impossible for either defendant to adequately answer [it]." They ask the Court to direct defendant to file an amended complaint identifying what acts and omissions have been committed by these defendants.

Rule 12(e) requires a more definite statement when the pleadings are "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Here, the complaint fails to name either Landgren or Glodis directly in the text, and there is no clear way for either defendant to determine exactly which acts are attributed to him. Although the complaint does allege various deficient prison conditions that *could* be attributed to either or both defendants, more is needed. Accordingly, the Court will grant the motion and order the plaintiff

---

[5] Even if prosecutorial immunity did not apply, the result would be the same because Early's activities are protected by qualified immunity. To determine whether a defendant has qualified immunity, a court must decide: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." *Lopera v. Town of Coventry*, 640 F.3d 388, 396 (1st Cir. 2011) (internal quotations omitted). Under the second prong, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Barton v. Clancy*, 632 F.3d 9, 22 (1st Cir. 2011) (internal quotations omitted). "This is an objective test; it does not look to the defendants' subjective beliefs concerning the unlawfulness of their conduct." *Lopera*, 640 F.3d at 396. Taking the allegations as true, a reasonable official would have had no reason to believe that delaying the transfer for a few days would have violated plaintiff's constitutional rights. Therefore, the doctrine of qualified immunity applies. For these purposes, it does not matter whether Early believed, as the complaint alleges, that the delay was going to facilitate an attack on plaintiff. It also does not matter if the delay technically violated the IAD. *See Boveri v. Town of Saugus*, 113 F.3d 4, 7 (1st Cir. 1997) ("A regulatory violation, like a violation of state law, is not inherently sufficient to support a § 1983 claim."); *Amsden v. Moran*, 904 F.2d 748, 757 (1st Cir. 1990) ("Even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process.").

to submit an amended complaint that states the specific claims against each specific named defendant. *See Carter v. Newland*, 441 F. Supp. 2d 208, 213-14 (D. Mass. 2006) (ordering more definite statement in similar circumstances).

**IV.     The Motion to Compel**

Plaintiff has moved to compel Glodis and Landgren to provide the names of certain unknown individuals, including defendant John Doe.

Plaintiff's motion to compel the production of information falls within the ambit of Fed. R. Civ P. 37. That rule provides a remedy for an opposing party's failure to comply with certain discovery requests. But "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d). Discovery has not yet begun in this case. Accordingly, the motion is premature and will be denied without prejudice to its renewal at the appropriate phase of the proceedings.

**V.      Conclusion**

For the foregoing reasons, Early's motion to dismiss is GRANTED, Glodis and Landgren's motion for a more definite statement is GRANTED, and plaintiff's motion to compel is DENIED. Plaintiff shall have 28 days from the date of this order in which to file an amended complaint that addresses the problems outlined in this memorandum and order, or the claims against Glodis and Landgren may be subject to dismissal.

**So Ordered.**

          /s/ F. Dennis Saylor
          F. Dennis Saylor IV
          United States District Judge

Dated: July 1, 2011