# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WAYNE THOMPSON, ) | |
| ) | |
| Plaintiff, ) | Civil No. |
| ) | 10-40126-FDS |
| v. ) | |
| ) | |
| WORCESTER COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON MOTION OF DEFENDANTS GUY GLODIS AND MICHAEL LANDGREN TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

**SAYLOR, J.**

This is an action by an inmate alleging violations of his Eighth and Fourteenth Amendment rights. Plaintiff Wayne Thompson, who is proceeding *pro se*, contends that Massachusetts officials conspired to injure him and to deny him medical treatment while he was incarcerated at the Worcester County Sheriff's Office. After the incident, Thompson filed a grievance with the Facility Grievance Coordinator, which was denied as time-barred under applicable state regulations. Pursuant to 42 U.S.C. § 1983, Thompson then brought this action against Worcester County, the Sheriff of Worcester County, and various jail officials.

Sheriff Guy W. Glodis and Classification Director Michael Landgren have moved to dismiss the action under Fed. R. Civ. P. 12(b)(6), asserting as an affirmative defense that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff has moved for limited discovery pursuant to Fed. R. Civ. P. 56(f) to

compel defendants to produce a tape recording that allegedly proves that he did exhaust his administrative remedies.

For the following reasons, the motion to dismiss will be denied and the motion for limited discovery will be denied as moot.

**I.     Background**

The facts are stated as alleged in the complaint.

Plaintiff Wayne Thompson is a prisoner incarcerated in New York. (Amend. Compl. at 1). In March, 2010, he was transported to Massachusetts to face various criminal charges in Worcester County District Court. (*Id.*).[1] Thompson was held as a pretrial detainee at the Worcester County Sheriff's Office. (*Id.*). Thompson alleges that he observed gang members providing bribes to jail officials in exchange for special privileges. (*Id.*). Among other things, he contends that jail officials cooperated with gang members to place enemies of the gang in "long-term keeplock." (*Id.* at 2).

According to Thompson, between April 22 and April 26, jail and state officials conspired to allow a gang member to attack him in his cell. (*Id.* at 2-3). First, a correctional officer at the jail (styled "John Doe" by the complaint) called Thompson a "snitch" within the hearing of gang members in order to turn them against him. *(Id.)*. District Attorney Joseph Early then intentionally delayed Thompson's transfer back to New York to allow time for the attack, while jail officials, including defendant Michael Landgren, kept Thompson in the same cell block in

---

[1] Thompson was transported and held in Massachusetts pursuant to the Interstate Agreement on Detainers ("IAD"). The IAD is a congressionally-sanctioned interstate compact that establishes procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial. *See Cuyler v. Adams*, 449 U.S. 433, 435 n.1 (1981). Massachusetts and New York are both parties to the compact. *See* Mass. Gen. Laws ch. 276 App., §§ 1-1 to 1-8; N.Y. Crim. Proc. Law § 580.20; *Commonwealth v. Dickson*, 386 Mass. 230 (1982).

violation of facility policies. (*Id.*).[2] On April 26, jail officials removed security personnel from Thompson's housing block. (*Id.* at 3). He was then attacked and injured in his cell by an armed inmate. *(Id.)*. Jail officials next forced Thompson to wait in his cell before receiving medical assistance and then conspired to deny him proper medical care. (*Id.*).[3] Thompson was then returned to New York. (*Id.*).

Thompson subsequently filed an "Inmate Grievance Form" with the Worcester County Sheriff's Office. (Amend. Compl. Ex. A). The form indicates that the incident occurred on April 25, 2010, and contains Thompson's signature, dated May 1, 2010. (*Id.*). Because Thompson was moved to a facility in New York shortly after the incident, he filed his grievance by mail, postmarked May 6, 2010. (*Id.*). The Institutional Grievance Coordinator received it on May 10, 2010. (*Id.*). The Coordinator denied Thompson's grievance on the same day, finding the claim time-barred by regulations requiring inmate grievances to be filed within 10 days of the incident at issue. (*Id.*). Later that month, on May 19, 2010, Thompson met with Superintendent Gallant regarding his grievance. (*Id.* at 3, 10).

Thompson filed this action on July 2, 2010, against Worcester County, Early, Doe, Landgren, and Sheriff Glodis, alleging violations of his rights under the Eighth and Fourteenth Amendments. The individual defendants are being sued in both their personal and official capacities.

---

[2] Thompson alleges that Early's delay violated the IAD, which provides that "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state." Mass. Gen. Laws ch. 276 App., § 1-1(V)(e).

[3] The complaint makes inconsistent statements as to how long Thompson had to wait before receiving medical care.

3

## II. Motion to Dismiss

Defendants Glodis and Landgren have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), alleging that plaintiff failed to exhaust his administrative remedies before filing suit, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).

### A. Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Because plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); Fed. R. Civ. P. 8(e) ("[p]leadings must be construed so as to do justice."); *see also Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23

(1st Cir. 2000). Where the Court cannot ascertain the nature and basis of any legitimate claims, however, it is under no obligation to rewrite the pleadings on his behalf. *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 Fed. Appx. 274, 276-277 (11th Cir. 2008) ("While a trial judge is to employ less stringent standards in assessing *pro se* pleadings than would be used to judge the final product of lawyers, this leniency does not permit the district court to act as counsel for a party or to rewrite deficient pleadings.").

### B. The PLRA Exhaustion Requirement

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[4] This limitation on prisoners' ability to sue "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A plaintiff's failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden to raise and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The PLRA "uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Requiring proper exhaustion in administrative proceedings "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). To that end, the PLRA requires an inmate, prior to initiating a lawsuit in

---

[4] Massachusetts has enacted an analogous exhaustion requirement. Mass. Gen. Laws ch. 127, § 38F. The same exhaustion analysis generally applies under both the PLRA and Section 38F. *See, e.g. Andrade v. Maloney*, 2006 WL 2381429, at *5 (D. Mass. Aug. 16, 2006).

court, to exhaust all "available" remedies, not just those that meet federal standards or that provide the same type of relief that the plaintiff seeks in court. *Woodford*, 548 U.S. at 85. Requirements set by state law and regulations "define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Moreover, the need to comply with these administrative requirements extends to "an agency's deadlines and other critical procedural rules." *Woodford,* 548 U.S. at 90-91.

### B. Massachusetts's Inmate Grievance Process

Pursuant to Mass. Gen. Laws ch. 124, § 1(i) and (q) and ch. 127, § 38E, the Massachusetts Commissioner of Correction issues regulations for the processing of inmate grievances, which are codified at 103 C.M.R. § 491.00 *et seq.* Under these regulations, "[a] grievance shall be filed within ten working days of the actual incident or situation or within ten working days of the inmate's becoming aware of the incident or situation." *Id.* § 491.08(4). Grievances and appeals may be filed with the Superintendent, Deputy Superintendent, Facility Administrator, or Institutional Grievance Coordinator. *Id.* § 491.09(3).

The grievance is initially reviewed by the Institutional Grievance Coordinator, who must propose a resolution or deny the grievance within ten working days of receiving it. *Id.* § 491.06 and 491.10. Grievance denials must be made in writing and must "inform the inmate of the right of appeal." *Id.* § 491.10(4). The inmate may appeal "within ten working days from receipt of a decision to the Superintendent." *Id.* § 491.12(1). At both the initial grievance review and upon appeal, the Institutional Grievance Coordinator and the Superintendent may either extend or waive the applicable ten-day filing deadline. *Id.* §§ 491.18 and 491.19.

If the Superintendent denies a grievance appeal, the regulations require that the appeal

6

package be forwarded to the "departmental grievance coordinator," who may take any further action that the Superintendent is entitled to take in response to the original appeal. *Id.* § 491.13. This is the final stage of the administrative grievance process.

### C. Timeliness of Plaintiff's Grievance Claim

Defendants claim that plaintiff failed to exhaust his administrative remedies because he filed his grievance after the ten-day period during which he was required to file it by regulation.

As noted, the applicable regulation requires a grievance to be filed within ten working days of the alleged incident. 103 C.M.R § 491.08(4). Here, plaintiff's grievance form indicates that the incident occurred on April 25, 2010, a Sunday. The filing period, which runs only on "working days," therefore began the next working day, April 26, 2010, and ended ten working days later, on May 10, 2010. The pleadings establish that plaintiff's grievance was signed on May 1, mailed with a postmark dated May 6, and received and decided by the Institutional Grievance Coordinator on May 10, 2010. All of these dates fall within ten working days of the incident at issue. Plaintiff's grievance was therefore timely and poses no bar to this action.

### D. Plaintiff's Administrative Appeal

Defendants also assert that plaintiff failed to exhaust his administrative remedies because he did not appeal the Institutional Grievance Coordinator's denial of his grievance.

Plaintiff's complaint alleges that he participated in an interview with Deputy Superintendent Gallant on May 19, 2010. In his response to defendants' motion, plaintiff explains that this meeting concerned his appeal of the Institutional Grievance Coordinator's denial, and that defendants have in their custody a recording of the interview that proves that plaintiff did appeal the initial denial. These allegations, which this Court must take as true for purposes of a

7

motion to dismiss, establish that plaintiff did appeal his grievance denial.

Because the pleadings allege facts sufficient to establish that plaintiff may have properly exhausted his administrative remedies before bringing this suit, as required by the PLRA, his action survives defendants' motion to dismiss.

### III. Motion for Limited Discovery

Plaintiff moves for limited discovery pursuant to Fed. R. Civ. P. 56(d) in order to compel production of the recording alleged to prove that he did appeal his grievance denial and thereby exhaust his administrative remedies. Rule 56 governs summary judgment proceedings. The Court has not converted defendants' motion to dismiss to a summary judgment proceeding because it finds that the factual allegations in the complaint are sufficient to establish a contested issue of material fact regarding whether plaintiff did appeal the grievance denial. Because the action is not dismissed, plaintiff will have an opportunity to access the recording he seeks through ordinary discovery procedures. A Rule 56(d) order for limited discovery is therefore unnecessary and the motion will be denied as moot.

### IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is DENIED and plaintiff's motion for discovery is DENIED as moot.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: October 11, 2011